**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **LODSYS, LLC,** | |
| **Plaintiff,** | |
| | C.A. No. 2:11-CV-90 |
| **v.** | |
| | **JURY TRIAL DEMANDED** |
| **BROTHER INTERNATIONAL CORPORATION**, *et al.*, | |
| **Defendants.** | |

**DEFENDANT HEWLETT-PACKARD COMPANY'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**TO SEVER AND TRANSFER VENUE**

Defendant Hewlett-Packard Company ("HP") respectfully moves to dismiss the claims

alleged against HP by plaintiff Lodsys, LLC ("Lodsys") for misjoinder under Fed. R. Civ. P.

20(a) and 21.  In the alternative, HP requests the Court sever the claims alleged against HP under

Fed. R. Civ. P. 21 and transfer the severed claims to the Southern District of Texas.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................- 1 -

II.    BACKGROUND ....................................................................................................- 1 -

III.   ARGUMENT ..........................................................................................................- 3 -

    A.    The Court Should Dismiss Lodsys' Claims Against HP for Misjoinder. ..........- 3 -

        1.    Lodsys' Complaint Does Not Satisfy the Transactional Relatedness
             Prong of Rule 20. ................................................................................- 4 -

        2.    The Burden on the Court and HP in Litigating the Misjoined
             Claims Far Outweighs Any Potential Prejudice to Lodsys....................- 8 -

    B.    In the Alternative, the Court Should Sever Lodsys' Claims Against HP. .........- 9 -

    C.    If Severed, the Claims Against HP Should Be Transferred to the Southern
        District of Texas—The Undisputed Hub of HP's Allegedly Infringing
        Activities. ................................................................................................- 10 -

        1.    The Hub of HP's Operations Relevant to this Case Is In Houston,
             Texas. ...............................................................................................- 11 -

        2.    The Claims Against HP Could Have Been Filed in the Southern
             District of Texas. ..............................................................................- 12 -

        3.    The Convenience of the Witnesses and Litigants Strongly Favors
             Transfer to the Southern District of Texas. ........................................- 12 -

        4.    The Fair and Efficient Administration of Justice Favors Transfer. .....- 17 -

IV.    CONCLUSION .......................................................................................................- 18 -

# TABLE OF AUTHORITIES

**Page**

CASES

*Acevedo v. Allsup's Convenience Stores, Inc.,*
   600 F.3d 516 (5th Cir. 2010) ....................................................................4

*Ams. For Fair Patent Use, LLC v. Sprint Nextel Corp.,*
   2011 WL 98279 (E.D. Tex. Jan. 12, 2011) ................................................4

*Androphy v. Smith & Nephew, Inc.,*
   31 F. Supp. 2d 620 (N.D. Ill. 1998) ........................................................4, 5

*Bravado Int'l Group Merchandising Servs. v. Cha,*
   2010 WL 2650432, at *5-*6 (N.D. Cal. June 30, 2010) ............................9

*Colt Defense LLC v. Heckler & Koch Defense, Inc.,*
   2004 U.S. Dist. LEXIS 28690 (E.D. Va. Oct. 22, 2004) ...................4, 8, 9

*Finisar Corp. v. Source Photonics, Inc.,*
   No. C-10-0032, slip op. at 1 (N.D. Cal. May 5, 2010) ...........................8, 9

*Golden Scorpio Corp. v. Steel Horse Bar & Grill,*
   596 F. Supp. 2d 1282 (D. Ariz. 2009) .......................................................4

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947) .................................................................................13

*Hanley v. First Investors Corp.,*
   151 F.R.D. 76 (E.D. Tex. 1993) .................................................................5

*In re Horseshoe Entm't,*
   337 F.3d 429 (5th Cir. 2003) .......................................................12, 16, 17

*In re Nintendo Co., Ltd.,*
   589 F.3d 1194 (Fed. Cir. 2009) ...............................................................12

*In re TS Tech USA Corp.,*
   551 F.3d 1315 (Fed. Cir. 2008) ...............................................................16

*In re Volkswagen of Am. Inc. ("Volkswagen II"),*
   545 F.3d 304 (5th Cir. 2008) ............................................................ passim

*Langton v. Cbeyond Commc'n, L.L.C.,*
   282 F. Supp. 2d 504 (E.D. Tex. 2003) .....................................................10

*Mediostream, Inc., v. Microsoft Corp.,*
   No. 2-08-cv-3690, 2009 WL 3161380 (E.D. Tex. Sept. 30, 2009) ..........13

WEST\223509232.1

# TABLE OF AUTHORITIES
(continued)

**Page**

*Multi-Tech Sys., Inc. v. Net2Phone, Inc.*,
   2000 WL 34494824 (D. Minn. June 26, 2006)....................................................................4, 5

*MyMail, Ltd. v. America Online, Inc.*,
   223 F.R.D. 455 (E.D. Tex. 2004).............................................................................5, 6, 7

*Oasis Research, LLC v. Adrive, LLC*,
   Civil Action 4:10-CV-435-MHS (E.D. Tex. May 23, 2011) (D.I. 204)....................................7

*PacID Group, LLC v. Cisco Sys., Inc.*,
   Case No. 6:09-cv-324 (E.D. Tex. Mar. 16, 2011) ..........................................................6

*Parallel Networks v. AEO, Inc.*,
   Case No. 6:10-cv-111 (E.D. Tex. Mar. 15, 2011) ........................................................6, 8

*Pergo, Inc. v. Alloc, Inc.*,
   262 F. Supp. 2d 122 (S.D.N.Y. 2003).....................................................................4, 5, 9

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
   220 F.R.D. 415 (D. Del. 2004) ..............................................................................4, 8

*Remmers v. U.S.*,
   2009 WL 3617597 (E.D. Tex. 2009) ....................................................................... passim

*Shoemake v. Union Pac. R.R. Co.*
   233 F. Supp. 2d 828 (E.D. Tex. 2002)..........................................................10, 14, 16, 17

*The Whistler Group, Inc. v. PNI Corp.*,
   2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) ................................................................16

*Tompkins v. Able Planet, Inc.*,
   Civil Action No. 6:10-CV-58-MHS (E.D. Tex. Feb. 17, 2011) (D.I. 136) ..........................6, 7

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964).........................................................................................10

*Volkwagen AG v. Dee Eng'g, Inc.*,
   2003 WL 1089515 (S.D. Ind. Mar. 4, 2003)................................................................14

*WiAV Networks, LLC v. 3COM Corp.*,
   2010 WL 3895047 (N.D. Cal. Oct. 1, 2010).............................................................4, 5, 7, 8

**TABLE OF AUTHORITIES**
(continued)

**Page**

STATUTES

28 U.S.C. § 1404(a) ..........................................................................................................10, 12, 14

OTHER AUTHORITIES

Fed. R. Civ. P. 16 ..........................................................................................................................9

Fed. R. Civ. P. 20 ...................................................................................................................1, 4, 5

Fed. R. Civ. P. 20(a) ............................................................................................................4, 5, 6, 9

Fed. R. Civ. P. 20(a)(2).................................................................................................... passim

Fed. R. Civ. P. 20(a)(2)(A) ......................................................................................................4

Fed. R. Civ. P. 21 ..............................................................................................1, 2, 8, 10, 18

Fed. R. Civ. P. 42(a) ...............................................................................................................8

WEST\223509232.1

## I.       INTRODUCTION

This is a textbook case of misjoinder.  Federal Rule of Civil Procedure 20(a)(2) permits

multiple defendants to be joined in a single action only if the plaintiff's claims arise out of the

same transaction or occurrence and there is a question of law or fact common to all defendants.

Here, Lodsys alleges unrelated patent claims against dramatically different sets of accused

products offered by unrelated defendants.  Lodsys does not and cannot allege any conspiracy or

joint action among the defendants or their accused products to justify joinder.  Federal Rules 20

and 21 therefore require that the claims against HP be dismissed or severed from the claims

against the other defendants.  If the Court elects to sever the claims against HP rather than

dismissing them, HP respectfully requests the Court transfer the severed claims to the Southern

District of Texas, Houston Division, where the bulk of the allegedly infringing activities,

relevant witnesses, and potentially relevant sources of proof are located.

## II.      BACKGROUND

Lodsys filed its complaint on February 11, 2011 against 12 separate companies.  *See*

D.I. 1 at ¶¶ 2-11.  Other than the Samsung entities,[1] the complaint does not allege any connection

or relationship among the defendants, nor does the complaint allege any connection among the

alleged acts of infringement.  *Id.*  Rather, the complaint alleges separate infringement claims

against each defendant based on each defendant's own allegedly infringing products.  *Id.*

¶¶ 15-24, 26-36, 38-40.  The complaint does not allege that the defendants' products bear any

relationship to one another, nor does the complaint allege that the defendants' purported

infringement is part of a common occurrence or transaction.  *Id.*

---

[1]  The complaint generally treats the three Samsung entities as a single entity.  *Id.* ¶ 10.

WEST\223509232.1

In fact, the complaint demonstrates that the accused products are very different from one another.  For United States Patent No. 7,620,565 ("the '565 patent"), the accused products are printers using different types of software for five defendants, personal computers using different types of software for two defendants, cell phones and software for one defendant, server products and software for one defendant, and antivirus and security products for one defendant.  *Id.* ¶¶ 15-23.  For United States Patent No. 7,222,078 ("the '078 patent"), the complaint vaguely accuses "computer server(s) to collect data" for at least eight defendants, online video services for one defendant and cell phones and software for one defendant (a different defendant from the one whose cell phones are accused of infringing the '565 patent).  *Id.* ¶¶ 26-35.  For United States Patent No. 5,999,908 ("the '908 patent"), the accused products are different types of "website surveys," which is an entirely different class of accused products from the other two patents.  *Id.* ¶¶ 38-39.  And only two defendants are accused of infringing the '908 patent in the first place. *Id.*  In all, the complaint accuses of infringement at least five different classes of hardware products and at least 17 different types of software, software drivers, or Web services.

The following chart demonstrates the dramatic differences among the sets of accused products across the different defendants and different patents in this case:

- 2 -

| Party | '565 Patent | '078 Patent | '908 Patent |
|-------|-------------|-------------|-------------|
| Brother | Brother printers with Brother ControlCenter3 software driver | computer server(s) to collect data | |
| Canon | Canon printers with Pixma Extended Survey Program and Solution Menu EX | computer server(s) to collect data | |
| HP | HP personal computers with HP Support Assistant and printers with SureSupply | computer server(s) to collect data | |
| Hulu | | online video services, including but not limited to Hulu and Hulu+, and computer server(s) to collect data | |
| Lenovo | Lenovo personal computers with Lenovo Smile Bar | computer server(s) to collect data | |
| Lexmark | Lexmark printers with Lexmark SmartSolutions and Lexmark Printer Home | computer server(s) to collect data | |
| Motorola | Motorola cell phones with Motorola Help Center | computer server(s) to collect data | |
| Novell | Novell server products with Novell Support Advisor | computer server(s) to collect data | |
| Samsung entities | Samsung printers with Samsung Universal Printer Driver | Samsung cell phones with Samsung Media Hub, and infringing computer server(s) to collect data | website surveys, including but not limited to surveys on www.samsung.com and other Samsung websites |
| Trend Micro | antivirus and security products, including but not limited to the Trend Micro Titanium Antivrus | computer server(s) to collect data | website surveys, including but not limited to surveys on www.trendmicro.com and other Trend Micro websites |

## III.    ARGUMENT

### A.    The Court Should Dismiss Lodsys' Claims Against HP for Misjoinder.

Lodsys' complaint presents an aggravated case of misjoinder.  Joinder under Rule

20(a)(2) requires both transactional relatedness and a question of law or fact common to all

defendants:

> Persons…may be joined in one action as defendants if:
>
> (A)  any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B)  any question of law or fact common to all defendants will arise in the action.

- 3 -

Fed. R. Civ. P. 20(a)(2).  Courts have described Rule 20 as creating a two-prong test, allowing joinder of defendants when (1) their claims arise out of the "same transaction, occurrence, or series of transactions or occurrences" and (2) there is at least one common question of law or fact linking all the claims.  *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 521 (5th Cir. 2010); *Ams. For Fair Patent Use, LLC v. Sprint Nextel Corp.*, 2011 WL 98279 at *2 (E.D. Tex. Jan. 12, 2011).  In intellectual property cases, "[t]he overwhelming authority…indicates that allegations against multiple and unrelated defendants for independent acts of patent, copyright, and/or trademark infringement do not set forth claims arising from the same transaction or occurrence within the meaning of Rule 20(a)."  *Colt Defense LLC v. Heckler & Koch Defense, Inc.*, 2004 U.S. Dist. LEXIS 28690, *13 (E.D. Va. Oct. 22, 2004); *see also Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009) ("allegations against multiple and unrelated defendants for acts of patent, trademark, and copyright infringement do not support joinder under Rule 20(a).").

### 1.   Lodsys' Complaint Does Not Satisfy the Transactional Relatedness Prong of Rule 20.

Lodsys' complaint comes nowhere close to satisfying the first prong of the joinder rule— the requirement that joined claims arise from the "same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2)(A).  Courts routinely hold that patent claims against unrelated defendants offering different accused products do not satisfy this prong of Rule 20(a).[2]  As these courts have recognized, joinder is inappropriate where the "operative

---

[2]  *See, e.g., Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) ("the fact that two parties may manufacture or sell similar products…is not sufficient to join unrelated parties as defendants"); *Multi-Tech Sys., Inc. v. Net2Phone, Inc.*, 2000 WL 34494824 at *6 (D. Minn. June 26, 2006) ("where patent infringement claims are brought against multiple, unrelated defendants, courts have held joinder to be inappropriate"); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998); *WiAV Networks, LLC v. 3COM Corp.*, 2010 WL 3895047 at *2-*3

- 4 -

facts of each transaction"—here, the offer and sale of accused products—are "distinct and unrelated to any other." *Multi-Tech Sys., Inc. v. Net2Phone, Inc*., 2000 WL 34494824, at *6. And joinder is inappropriate where the defendants "are separate companies that independently design, manufacture and sell different products in competition with each other." *Androphy*, 31 F. Supp. 2d at 623. This Court recognizes there must be a "logical relationship" between the transactions and occurrences. *Hanley v. First Investors Corp.,* 151 F.R.D. 76, 79 (E.D. Tex. 1993).

Even if the defendants' defenses somehow arise from the same transaction or occurrence, joinder still is inappropriate because Rule 20(a) "does not encompass defenses asserted against a plaintiff." *WiAV Networks*, 2010 WL 3895047 at *3. Thus, absent an allegation of joint and several liability or a "cooperative or collusive relationship" among the defendants, even the fact that "parties may manufacture or sell similar products" does not satisfy the first prong of Rule 20(a)(2). *See Pergo*, 262 F. Supp. 2d at 128.

This Court previously has recognized that severance "could be appropriate if the defendants' methods or products were dramatically different." *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004). In *MyMail*, the Court denied a motion to sever, finding that the legal question as to the patent's scope was common to all the defendants and permitted joinder. *Id.* But for at least two reasons, *MyMail* is distinguishable from this case.

First, when that decision was handed down in 2004, the Court noted that the interpretation of Rule 20 by other courts "perhaps fails to recognize the realities of complex, and particularly, patent, litigation." Id. at 457. More recently, however, the judge who decided *MyMail* has expressed concerns about potential abuses of the court system by plaintiffs in patent

(N.D. Cal. Oct. 1, 2010) (joinder inappropriate as to "unrelated and competing defendants for their own independent acts of patent infringement.").

- 5 -

cases, especially cases involving numerous defendants.  *See Parallel Networks v. AEO, Inc.*, Case No. 6:10-cv-111 (E.D. Tex. Mar. 15, 2011) at 6 (unpublished) (in cases with numerous defendants, "even a simple joint proposed discovery order turns into hours of attorney communication"); *PacID Group, LLC v. Cisco Sys., Inc.*, Case No. 6:09-cv-324 (E.D. Tex. Mar. 16, 2011) at 3 (unpublished) (requiring submission of settlement agreements *in camera* to probe plaintiff's litigation and settlement strategy).  Since 2004, misjoinder of numerous defendants in single patent cases has become the rule, not the exception, in the Eastern District of Texas. Adopting the interpretation of Rule 20(a) espoused by the majority of courts will help curb this abuse of the court system.

Second, *MyMail* involved a single patent directed to a "method and apparatus for accessing a computer network by a roaming user."  *MyMail*, 223 F.R.D. at 456.  The Court found insufficient proof that the accused products were "so different that determining infringement in one case is less proper or efficient than determining infringement in multiple cases."  *Id.* at 457. Here, in contrast, the accused products are "dramatically different"—they range from printers to personal computers to cell phones to computer servers to antivirus products to online video services to website surveys, not to mention the numerous different software products that run on each type of hardware product.  This is truly a situation where the accused products are so different that determining infringement in a single case is less efficient than determining infringement in multiple cases—especially because the case against HP belongs in a different venue.  Thus, the accused products here are precisely the "dramatically different" products that warrant a remedy for misjoinder under the Court's reasoning in *MyMail.*

This Court recently has embraced the "dramatically different" test in deciding motions like this one.  In *Tompkins v. Able Planet, Inc.*, Civil Action No. 6:10-CV-58-MHS (E.D. Tex.

- 6 -

Feb. 17, 2011) (D.I. 136), this Court severed claims against unrelated defendants with dramatically different products consisting of headphones, punching bags, flashlights, tents, espresso machines and baby bottles. *Id.* at 3. The Court found two groups of defendants—those that manufactured products and those that advertised products. *Id.* at 1. The Court found the manufacturing defendants were all independent entities and none of the advertising defendants advertised all of the accused products, and concluded that the plaintiff "has not identified any transaction or occurrence that factually connects all of the Defendants in a relevant or material way." *Id.* at 3. In *Oasis Research, LLC v. Adrive, LLC,* Civil Action 4:10-CV-435-MHS (E.D. Tex. May 23, 2011) (D.I. 204), the Court noted that "[c]ourts in this District have consistently held that as long as the Defendants' allegedly infringing products are not dramatically different, then determining Defendants' liability will involve substantially overlapping questions of law and fact." *Id.* at 4 (citations omitted). The Court in *Oasis* distinguished *Tompkins* and its "dramatically different" products, noting that the *Oasis* defendants' products all offered the same service; that is, online backup and storage. *Id.*

Unlike the plaintiffs in *MyMail* and *Oasis,* Lodsys' complaint fails to satisfy the relatedness prong of Rule 20(a)(2) because the accused products are dramatically different. As demonstrated above, the accused products are printers, personal computers, cell phones, computer servers, antivirus products, online video services, website surveys, and many different software products that run on each type of hardware product. With so many different types of accused products, all of the discovery, witnesses, claim construction issues, infringement proof, damages proof and dispositive motions will be different for HP than for the other defendants. *See WiAV Networks,* 2010 WL 3895047 at *2 ("the accused defendants…are also entitled to present individualized assaults on questions of non-infringement, invalidity, and claim

construction."). Furthermore, the complaint does not allege any conspiracy, joint action, or joint and several liability among HP and the other defendants. *Finisar Corp. v. Source Photonics, Inc.*, No. C-10-0032, slip op. at 1 (N.D. Cal. May 5, 2010). The only thing HP has in common with the other defendants is that HP allegedly infringes two of the same patents. This constitutes misjoinder, and dismissal of the claims against HP is the appropriate remedy. Fed. R. Civ. P. 21. The possibility the Court might later consolidate cases against unrelated defendants before trial under Rule 42(a) does not change this result. *See Philips*, 220 F.R.D. at 418.

### 2. The Burden on the Court and HP in Litigating the Misjoined Claims Far Outweighs Any Potential Prejudice to Lodsys.

If the misjoined claims are allowed to stand, it is the Court and HP who will face a significant litigation burden, not Lodsys. Preserving the misjoined claims in a single suit will force HP to participate in many aspects of the case that have no relevance to HP. For instance, HP will be required to review numerous pleadings, motions and discovery, and to attend depositions, hearings and conferences that would have little or no bearing on issues directly impacting HP. *See Parallel Networks v. AEO, Inc.*, Case No. 6:10-cv-111 (E.D. Tex. Mar. 15, 2011) at 6. (unpublished) ("even a simple joint proposed discovery order turns into hours of attorney communication"); *WiAV Networks*, 2010 WL 3895047 at *3 ("[W]hatever common issues may exist from device to device will be overwhelmed by the individual issues of claim construction, damages, willfulness, and discovery supervision."). Furthermore, HP faces a substantial risk of jury confusion resulting from evidence and arguments directed at the other defendants' accused products and from the jury's views about alleged infringement by the other defendants. *Colt Defense*, 2004 U.S. Dist. LEXIS 28690, at *15 (misjoined claims create "possibility of jury confusion over the evidence required to prove these claims"); *Philips*, 220

- 8 -

F.R.D. at 418 (finding substantial risk of prejudice to Defendant A if jury believes that Defendant A is linked to Defendant B).

No doubt Lodsys will argue that judicial economy and efficiency warrant preserving the misjoined claims in a single lawsuit.  Courts have repeatedly rejected this argument.  *See, e.g., Colt Defense*, 2004 U.S. Dist. LEXIS, at *16 ("[T]o the extent that considerations of judicial economy can factor into the court's decision whether to sever the claims against [defendant], they do so only after the plaintiff has first satisfied the requirements of Rule 20(a).").  And concerns for judicial economy do not warrant preserving Lodsys' misjoined claim in any event. This case is in its infancy.  No discovery has been served, no depositions have been taken, and the Rule 16 Scheduling Conference has not yet occurred.  Any delay stemming from dismissal of the claims against HP is Lodsys' own fault for violating Rule 20(a)(2), and dismissal of HP will not delay Lodsys' case against the other defendants in any event.  On the other hand, the burden on the Court from managing a single lawsuit involving 12 separate defendants, at least five classes of hardware products, and at least 17 individual software products or services will be enormous.  *Finisar Corp.*, No. C-10-0032, at 1 ("The burden [plaintiff's] maneuver would place on a single judge—who would get credit for only *one* civil action under our assignment system—would be erroneous.").

**B.     In the Alternative, the Court Should Sever Lodsys' Claims Against HP.**

If the Court decides not to dismiss Lodsys' claims against HP, those claims should be severed from the claims against the other defendants.  *Bravado Int'l Group Merchandising Servs. v. Cha,* , 2010 WL 2650432, at *5-*6 (C.D. Cal. June 30, 2010).  Courts are authorized to sever claims where the alleged liability of one defendant is unrelated to the other defendants. *See Pergo*, 262 F. Supp. 2d at 128 (granting motion to sever and transfer).  The Court should follow *Philips, Pergo,* and the many other cases holding that patent infringement claims against

- 9 -

unrelated defendants should be severed into separate lawsuits under Fed. R. Civ. P. 21, and sever the claims against HP.

**C.    If Severed, the Claims Against HP Should Be Transferred to the Southern District of Texas—The Undisputed Hub of HP's Allegedly Infringing Activities.**

If the Court decides to sever the claims against HP, HP requests the Court transfer those claims to the Southern District of Texas for the convenience of the parties and witnesses and in the interest of justice.

A district court may transfer any civil action to any other district or division where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The goal of § 1404 "is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Shoemake v. Union Pac. R.R. Co.* 233 F. Supp. 2d 828, 829 (E.D. Tex. 2002), *citing Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The movant has the burden to show good cause for a change of venue.  *Remmers v. U.S.*, 2009 WL 3617597 at *2 (E.D. Tex. 2009), *citing In re Volkswagen of Am. Inc. ("Volkswagen II")*, 545 F.3d 304, 315 n.10 (5th Cir. 2008).  "When the movant demonstrates that the transferee venue is clearly more convenient…it has shown good cause and the district court should therefore grant the transfer."  *Volkswagen II*, 545 F.3d at 315.

In considering a motion to transfer venue, courts weigh (1) private interest factors relating to the litigants' convenience and (2) public interest factors related to the fair and efficient administration of justice.  *Langton v. Cbeyond Commc'n, L.L.C.,* 282 F. Supp. 2d 504, 509 (E.D. Tex. 2003).  Private interest factors, which involve the preferences and conveniences of the parties and witnesses, include:  "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case

- 10 -

easy, expeditious, and inexpensive." *Remmers*, 2009 WL 3617597 at *3, citing *Volkswagen II*, 545 F.3d at 315. The public interest factors address broader objectives, such as: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

Here, because the § 1404 factors weigh in favor of transfer, and because the Southern District of Texas is "clearly more convenient" than the Eastern District of Texas, this Court should transfer the claims against HP.

> **1.    The Hub of HP's Operations Relevant to this Case Is In Houston, Texas.**

HP is headquartered in Palo Alto, California, but Houston is HP's Regional Sales Office in the United States and is the hub of the activities potentially relevant to this case. Located at 20555 State Highway 249, the HP Houston campus is home to approximately 8,000 HP employees, including most of the key managers and teams involved in the development and operation of HP Support Assistant, one of the products accused of infringing the '565 patent. (See Declaration of John Landry, attached as Exhibit 1, at ¶ 4.) HP Support Assistant is a software application used with HP personal computers that allows customers access to software updates and product support from HP. (*Id.* ¶ 3.) Support Assistant is developed in several parts of the world, but the primary leadership and development teams for Support Assistant are in the Houston facility. (*Id.* ¶ 4.) These teams are responsible for overseeing the business and development of Support Assistant for integration into PCs and notebook computers. (*Id.* ¶ 5.)

Lodsys also accuses "HP printers with SureSupply" of infringing the '565 patent. SureSupply is a software product that executes on an HP server and works independently or in

coordination with HP printers to provide customer support, including the ability to remotely order ink for HP inkjet printers or toner for HP LaserJet printers through a Web browser. (See Declaration of Mark Harper, attached as Exhibit 2, at ¶ 3.) The primary base of operations for SureSupply is HP's facility in Boise, Idaho, while the servers on which the SureSupply software executes are in Austin, Texas. (Harper Decl. ¶ 5.) For the '078 patent, Lodsys vaguely accuses "computer server(s) to collect data." (Complaint ¶ 28.) Although HP cannot discern precisely what Lodsys is accusing, to the extent Lodsys means all computer servers that collect data, those servers would be located all over the world, including in the United States at the Regional Sales Office in Houston. (Landry Decl. ¶ 8.) Thus, Houston, Texas is a major hub where many witnesses and evidence relevant to this litigation will be found.

### 2. The Claims Against HP Could Have Been Filed in the Southern District of Texas.

The threshold determination under § 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Here, HP develops, supports and sells accused products in the Southern District and maintains its Regional Sales Office for the United States in Houston. (Landry Decl. ¶ 4.) This threshold determination is indisputably satisfied here.

### 3. The Convenience of the Witnesses and Litigants Strongly Favors Transfer to the Southern District of Texas.

The Federal Circuit has held that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). This is precisely the case here. As set forth below, the majority of the relevant witnesses and evidence are in Houston, while no witnesses or evidence is in Marshall.

**Relative ease of access to sources of proof favors transfer.**  The first private interest factor focuses on the locations of sources of proof, such as documents and physical evidence. *Remmers*, 2009 WL 3617597 at *4.  "[T]his factor almost invariably turns on which party will most likely have the greater volume of relevant documents and their presumed physical location in relation to the venues under consideration."  *Mediostream, Inc., v. Microsoft Corp.*, No. 2:08-cv-3690, 2009 WL 3161380, at *3 (E.D. Tex. Sept. 30, 2009) (order denying transfer rev'd by writ in *In re Microsoft Corp.* 630 F.3d 1361, 1365 (Fed. Cir. Jan. 5, 2011)).  HP undoubtedly will have the greater volume of documents and physical evidence, and much of it will be in Houston. As demonstrated above, the majority of the relevant documentation relating to HP Support Assistant are in Houston.  (Landry Decl. ¶ 6.)  Evidence relating to HP's computer servers is in Houston, Austin, and Palo Alto, while evidence relating to SureSupply is in Boise and Austin.

Most notably, however, HP has no relevant documents or physical evidence in Marshall. And Lodsys apparently does not either.  As explained below, Lodsys is organized in Texas for the sole purpose of pursing patent litigation.  Lodsys' CEO is located in the Chicago area, and the inventor of all of the Lodsys patents is in Massachusetts.

**The availability of process to secure the attendance of witnesses is a neutral factor or favors transfer.**  Another factor is the availability of compulsory process to secure the attendance at trial of unwilling or hostile witnesses.  *Remmers*, 2009 WL 3617597 at *4, citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 511 (1947), *Volkswagen II*, 545 F.3d at 316. Although discovery has not begun, it appears there are no witnesses within 100 miles of Marshall over which this Court could exercise its subpoena power.  If no unwilling witnesses reside within 100 miles of the Southern District of Texas, this factor is neutral.  But if there are former HP

- 13 -

employees who were involved in HP Support Assistant still living in Houston, the ability to secure their testimony favors transfer to the Southern District.

**The convenience and cost of attendance for willing witnesses strongly favors transfer.**  "The relative convenience of the witnesses is often recognized as the most important factor to be considered when ruling on a motion under § 1404(a)." *Remmers*, 2009 WL 3617597 at *5. (citations omitted).  "In terms of witnesses, venue is considered convenient in the district or division where the majority of witnesses are located." *Shoemake*, 233 F. Supp. 2d at 832. When addressing this factor, the court "considers not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case." *Volkwagen AG v. Dee Eng'g, Inc.,* 2003 WL 1089515 at *4 (S.D. Ind. Mar. 4, 2003).

Here, HP's core leadership team for HP Support Assistant and most of its relevant personnel, management and development teams are in Houston.  The witnesses in Houston are numerous and are clearly more significant than any Lodsys witness in Marshall (which appear to be zero).  Although HP Support Assistant is developed in several parts of the world, the primary leadership and development teams are in HP's Houston facility.  (Landry Decl. ¶ 4.)  As detailed in the declaration of John Landry, the potential HP witnesses who live and work in Houston include at least the following:  (1) John Landry, the lead architect for HP Support Assistant; (2) Eric Owhadi, the lead architect for the HP Support Assistant "cloud"; (3) members of the Support Assistant leadership team, which oversees and manages HP Support Assistant, including Cindy McGlamery, who is the Vice President of Notebook Total Customer Experience and Qualilty, and Antonio Neri, who is the Vice President of the PSG Total Care Services Organization; (4) Karen Trapani, who manages the Support Assistant business team responsible

for funding and obtaining information technology; (5) Eric Gagneraud, who manages the primary development team for Support Assistant; (6) Tim Arn, who manages another Support Assistant development team responsible for diagnostic resources integrated into Support Assistant; and (7) Rubin Gonzalez, who manages the North American support team assisting with deployment through training and documentation. (Landry Decl. ¶ 5.)

All of these witnesses live and work in the Southern District of Texas. The driving distance between Marshall and Houston is approximately 225 miles, far enough that witnesses traveling from Houston for court hearings and trial likely would have to make overnight accommodations. *See Remmers*, 2009 WL 3617597 at *6 ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."). And the personnel responsible for other areas of support for HP Support Assistant who do not live in Houston still have indirect contact with the leadership and development teams in Houston. These include the IT manager for Support Assistant and two individuals who are responsible for world-wide marketing for Support Assistant, all of whom reside in Cupertino, California. (Landry Decl. ¶ 7.)

For its part, Lodsys apparently has <u>no</u> witnesses in Marshall. Lodsys claims it is a Texas limited liability company having its principal place of business in Marshall. (Complaint ¶ 1.) However, the inventor of the asserted patents lives in Massachusetts; and Lodsys' CEO, Mark Small, appears to reside in Chicago, Illinois. (*See* Lodsys website pages; Mark Small's LinkedIn profile; Dan Abelow's website pages and resume, attached collectively as Exhibit 3.) Lodsys' only other witnesses likely will be outside experts. Thus, Lodsys has no real connection to

Marshall, and the Southern District of Texas is no more inconvenient for Lodsys and its witnesses than the Eastern District.

**Other practical problems and considerations favor transfer.**  Other practical problems and considerations include (i) the place of the alleged wrong; (ii) the plaintiff's choice of forum; and (iii) the possibility of delay and prejudice if the case is transferred.  *See Remmers*, 2009 WL 3617597, *6-*8.  In patent infringement cases, there is no singular "place of alleged wrong."  Courts, however, will look to the "hub of infringing activity."  *See, e.g., The Whistler Group, Inc. v. PNI Corp.,* 2003 WL 22939214 at *4 (N.D. Tex. Dec. 5, 2003) ("Indeed, the trier of fact ought to be as close as possible to the milieu of the [alleged infringing activity].").  As set forth above, there is a significant hub of alleged infringing activity with respect to HP Support Assistant in Houston, and therefore Houston is an appropriate "place of alleged wrong."

As to the plaintiff's choice of forum, the Fifth Circuit has stated this is a factor to be considered, but that in and of itself this factor is neither conclusive nor determinative.  *In re Horseshoe Entm't*, 337 F.3d at 429.  Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer. *Shoemake*, 233 F. Supp. 2d at 830;  *Volkswagen II,* 545 F.3d at 315 "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected…[w]hen the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer."

Here, there is no factual nexus tying this case to the Eastern District.  Although HP products accused of infringing the asserted patents are sold in the Eastern District of Texas, the Federal Circuit has held that where a defendant sells its products nationally, the mere sale of

- 16 -

those products in a particular district is irrelevant to whether that forum has an interest in the case.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).  Plaintiff's choice of forum, therefore, should be accorded little significance.

As for the possibility of delay and prejudice, in *In re Horseshoe Entm't,* the Fifth Circuit "recognize[d] that in rare and special circumstances a factor of 'delay' or of 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence."  337 F.3d at 434; *see also Shoemake,* 233 F. Supp. 2d at 834-35.  Thus, Lodsys bears the burden to establish any delay or prejudice caused by the transfer of this action.  However, this case is in its infancy, discovery has not yet begun, and this Court has not ruled on any substantive motions.  There is therefore no delay or prejudice associated with the transfer of this case.

### 4.      The Fair and Efficient Administration of Justice Favors Transfer.

For the public interest factors, the Eastern District of Texas considers (i) administrative difficulties flowing from court congestion; (ii) local interests; and (iii) the familiarity of the forum with the law and avoidance of conflicts of laws.  *See Volkswagen II,* 545 F.3d at 315.

**Administrative difficulties is a neutral factor.**  According to the most recent Federal Judicial Caseload Statistics, this factor is neutral.  The Southern District of Texas has more civil cases filed and pending than the Eastern District of Texas, but also has a greater number of case terminations.  In contrast, the Eastern District has fewer cases on its docket, but has a longer median time from the filing of a case to its final disposition.[3]  Thus, it appears Court congestion is relatively equal.

---

[3] *See* http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics.

**Local interests strongly favor transfer.**  Given the substantial bulk of witnesses and evidence located in Houston, and the absence of any substantial business in the Eastern District by any party, the Southern District has a greater interest in this lawsuit than this Court.  Because of the size of HP's Houston facility, a jury member from the Southern District would likely see the issues of this case having local import.

**Familiarity of the forum with the law/conflicts of laws is a neutral factor.**  This factor is irrelevant, because the transferee forum is also has subject matter jurisdiction over this case.

Because most of the witnesses and documents relevant to this case are in Houston and none are in Marshall, it is "clearly more convenient" to the parties and witnesses to litigate this case in the Southern District of Texas.  For the convenience of the parties and witnesses and in the interest of justice, the Court should therefore transfer the severed claims against HP.

## IV.   CONCLUSION

For the foregoing reasons, the claims against HP should be dismissed without prejudice pursuant to Fed. R. Civ. P. 20(a)(2) and 21.  In the alternative, Lodsys' claims against HP should be severed into a separate suit.  If the Court decides to sever the claims, HP respectfully requests transfer of the severed claims to the Southern District of Texas.

DATED: June 6, 2011                    Respectfully submitted,


                                       /s/ Brian K. Erickson
—————————————————————————

                                       Brian K. Erickson (Bar No. 24012594)
                                       brian.erickson@dlapiper.com
                                       **DLA Piper LLP (US)**
                                       401 Congress Avenue, Suite 2500
                                       Austin, TX 78701-3799
                                       Phone: 512.457.7000
                                       Fax: 512.457.7001

                                       Mark D. Fowler (Bar No. CA-124235)
                                       mark.fowler@dlapiper.com
                                       **DLA Piper LLP (US)**
                                       2000 University Avenue
                                       East Palo Alto, CA  94303-2214
                                       Phone: 650.833.2000
                                       Fax: 650.833.2001

                                       Sean C. Cunningham (Bar No. CA-174931)
                                       sean.cunningham@dlapiper.com
                                       Erin P. Gibson (Bar No. CA-229305)
                                       erin.gibson@dlapiper.com
                                       David R. Knudson (Bar No. CA-265461)
                                       david.knudson@dlapiper.com
                                       **DLA Piper LLP (US)**
                                       401 B Street, Suite 1700
                                       San Diego, CA 92101-4297
                                       Phone: 619.699.2700
                                       Fax: 619.699.2701

                                       ATTORNEYS FOR DEFENDANT HEWLETT-
                                       PACKARD COMPANY

**CERTIFICATE OF CONFERENCE**

This is to certify that, per the requirements of Local Rule CV-7(h), on June 6, 2011,

David R. Knudson, the undersigned counsel for Defendant Hewlett-Packard Company, conferred

on behalf of Defendant by telephone with William E. Davis, III, counsel for Plaintiff Lodsys,

LLC, in a good faith attempt to resolve the matter without court intervention. No agreement

could be reached and the discussion conclusively ended in an impasse, leaving the issue open for

the court to resolve.  Plaintiff opposes Defendant's Motion To Dismiss, or in the Alternative, to

Sever and Transfer Venue.

/s/   David R. Knudson
David R. Knudson

- 20 -

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 6th day of June 2011, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile transmission and/or first class mail.

/s/   Brian K. Erickson
Brian K. Erickson

- 21 -