## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

LODSYS, LLC,

      Plaintiff,

v.

BROTHER INT'L CORP., *et al.*,

      Defendants.

C.A. No. 2:11-CV-90

## DEFENDANT MOTOROLA MOBILITY, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AND MOTION TO COMPEL PRODUCTION

**<u>TABLE OF CONTENTS</u>**                                                      **<u>Page</u>**

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND .................................................................................................2

III. ARGUMENT .......................................................................................................5

    a.   MML Complied with Its Obligation to Produce Documents and Souce Code and
        Provide Corporate Representatives for Deposition.............................................6

        1.   MML's Production was Responsive to Rule 3-4(a) and Lodsys Document
            Requests…… ....................................................................................6

        2.   MML Produced Source Code for the Instrumentalities that Lodsys Properly
            Accused In its P.R. 3-1 Disclosures...............................................................7

        3.   MML  Appropriately Produced Available Financial Information Concerning What
            was Identified in Lodsys' P.R. 3-1 Disclosures ...........................................8

        4.   MML Cannot Produce Documents that do Not Exist, and MML is not Required to
            Create Documents for the Purposes of this Litigation ...................................9

        5.   MML was not Required to Produced Custodial ESI Because Lodsys Failed to
            Comply With the Court's Procedures for Discovery of Such Information ................12

        6.   MML Properly Designated and Provided 30(b)(6) Witnesses for Appropriate
            Topics About Which Testimony Could be Provided ....................................13

    b.   Lodsys' Motion Does Not Comply with Federal Rule 37 and Local Rule 7....................16

    c.   Sanctions are Unwarranted and Inappropriate ..................................................17

    d.   Lodsys's Motion is Procedurally Deficient Under the Federal and Local Rules ..............18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brazos River Auth. v. GE Ionics, Inc.*,
    469 F.3d 416 (5th Cir. 2006) ................................................................................. 15

*Grey v. Dallas I.S.D.*,
    265 Fed. App'x 342 (5th Cir. 2008) ................................................................... 6, 18

*Olivas v. U.S. Steel Corp.*,
    No. 2:11-cv-307, 2012 WL 527016 (E.D. Tex. Oct. 24, 2012) ..................... 6, 7, 8, 18


RULES

FEDERAL RULES OF CIVIL PROCEDURE 37(a)(1) ................................................... 2,17,18

FEDERAL RULES OF CIVIL PROCEDURE 37(a)(3)(B)(i) .................................................. 15

FEDERAL RULES OF CIVIL PROCEDURE 37(a)(3)(B)(ii) ................................................. 15

FEDERAL RULES OF CIVIL PROCEDURE 37(d)(1)(A) ..................................................... 15

FEDERAL RULES OF CIVIL PROCEDURE 37(d)(1)(B) ................................................ 2,17,18

LOCAL RULE CV-7(h)-(i) ...................................................................................... 2,14,17,18

## I.  INTRODUCTION

Lodsys failed to prosecute its case against Motorola Mobility, LLC ("MML") for over two years, neither taking any discovery of MML between the filing of its complaint in February 2011 and its 30(b)(6) deposition notice to MML on April 10, 2013, nor raising any issues with MML's production or discovery responses during that period.  Only at the end of the already-extended fact discovery period did Lodsys even begin to attempt to take discovery of MML or in any way try to meet its burdens of proof.  Now Lodsys attempts to turn the tables and shift its burdens onto MML with a baseless motion that flouts the procedural requirements of the Federal Rules and Local Rules.  Such tactics have been frowned upon when they have occurred, and because this case presents a particularly egregious example, MML respectfully submits that the Court should similarly deny Lodsys' Motion in this case.

Contrary to the assertions in its hastily-filed last-minute Motion, which Lodsys evidently recycled from a similar motion filed against Samsung a week earlier [Dkt. 737–739],[1] the only "ambush" in this case is the one now being attempted by Lodsys.  Filed without any meet-and-confer between counsel regarding the discovery issues identified in the Motion and coming just hours after (and notwithstanding) its requests to extend the filing deadline to which MML had already agreed, Lodsys' motion is not only procedurally defective and untimely, but worse still, a calculated attempt to conduct a fishing expedition while shifting Lodsys' burdens onto MML.

MML has worked diligently and in good faith to comply with its discovery obligations in this case.  Implicitly acknowledging this, Lodsys never raised any specific complaints regarding MML's production until the end of fact discovery.  When Lodsys did belatedly raise a discernible

---

[1] This Motion was rehashed from a substantially similar motion that Lodsys filed against Samsung [Dkt. 737–739], as shown by the Table of Contents of the Motion stating that "Samsung Should Be Sanctioned for Its Several Discovery Violations" (Mot. at i), and the incorrect and baseless assertion that "Motorola failed to provide any witness[]" on the topic of "The benefits of customer service via the Accused Technology, including but not limited to the cost savings associated with such customer service" (*id.* at 2) when in fact MML specifically designated Glenn Dubois as MML's 30(b)(6) witness on Lodsys' Topic 33.   (Declaration of Ketan Pastakia ("KP Decl.") ¶ 13 & Ex. 7; Mot. Exs. C–D.)

concern (rather than form letters largely duplicative to all defendants), MML produced additional materials in response shortly thereafter or explained why it could not do so (*e.g.*, because such non-custodial documents did not exist at MML). In its Motion, Lodsys continues to avoid specificity, making sweeping, generalized claims without citing to substantive evidence that would allow MML to meaningfully respond. Lodsys also misconstrues 30(b)(6) testimony and misleadingly conflates testimony concerning documents about non-accused and licensed web content as a whole with documents about the actual accused technology, HelpCenter, which provides access to a small portion of that licensed content on mobile devices.

Lodsys' complaints are the result not of any misconduct or delay by MML, but of Lodsys' lack of diligence in prosecuting its case. MML not only satisfied its own production requirements, but was the first party in any of the pending Lodsys litigations to take a deposition. Moreover, the core functionality of the accused HelpCenter application ("HelpCenter App") is already licensed to MML through a settlement agreement that Lodsys entered into with Oracle and RightNow in December, 2012—which Lodsys also unaccountably failed to produce for four months, until close to the end of fact discovery. Lodsys' request for sanctions is inappropriate and entirely unjust, and its last-minute motion to compel is factually and legally inadequate to cover for Lodsys' delay, lack of diligence, and failures to comply with the meet-and-confer and certification requirements of Federal Rules of Civil Procedure 37(a)(1) and 37(d)(1)(B) and Local Rules CV-7(h)–(i).

## II.     BACKGROUND

Lodsys filed 22 lawsuits against 98 defendants, accusing more than a thousand products of infringement. Yet it did little, if anything, to pursue its case against MML until shortly before the close of discovery. For its part, MML was diligent in meeting its production burdens and has timely responded to Lodsys' eleventh-hour requests. Having painted itself into an evidentiary corner, Lodsys now seeks an order that would reward its inexcusable failure to prosecute its case,

shortcutting its burdens of proof on infringement and damages based on purported discovery failures that are attributable only to Lodsys' own unjustifiable delays and failures to communicate.

On December 21, 2011, Lodsys served its infringement contentions, which purported to read 69 claims from the two patents-in-suit on certain portions of HelpCenter,[2] a relatively unknown and little-used Android application pre-installed on certain Motorola mobile devices that essentially provides access to certain web content through a slightly-modified web browser. In the intervening 19-plus months, Lodsys has neither amended nor supplemented its P.R. 3-1 Disclosures to account for any of MML's production, and has ignored a May 2012 letter from Motorola's counsel identifying numerous deficiencies in Lodsys' P.R. 3-1 Disclosures and requesting immediate correction and/or supplementation thereof. (KP Decl. ¶ 14 & Ex. 2.) Lodsys failed to acknowledge, address, or account for MML's response in any way; Lodsys never addressed the identified deficiencies in any way nor replied to MML. (*Id.*)

The accused HelpCenter app simply provides access to the same web content that is available through a standard web browser. The accused aspect of HelpCenter is that certain of the web content being viewed (but not HelpCenter itself) inquires whether that content was helpful, and gives the user an opportunity to provide comments about what was not helpful. This accused web-based comment functionality, which is identified in Lodsys' P.R. 3-1 Disclosures, is provided by a third-party product called RightNow, which MML has used for years. (Mot. Ex. E. at 67:18–82:4.) Notably, Lodsys <u>has not</u> accused of infringement the accessing or use of the comment

---

[2] Lodsys' P.R. 3-1 Disclosures identify "Motorola cellular phones and tablets, their associate software including at least Motorola Help Center, and associated servers" as "accused instrumentalities." (Ex. 1, p. 2.) Lodsys' infringement contentions only "analyzed Motorola Help Center using a Motorola cellular phone." (*Id.* at p. 3.) Exhibit A to Lodsys' P.R. 3-1 Disclosures, which Lodsys described as "a list of Motorola products including Motorola cellular phones, tablets, and their associated software currently known to Lodsys which directly infringe, contribute to infringement, and/or induce infringement of the . . . claims" (*id.* at pp. 2–3), bears the header "Motorola Cellular Phones and Tablets With Help Center" and does not list or describe any other items or products. (*Id.* at Ex. A). Similarly, Lodsys' infringement charts for the '565 and '078 patents only accuse "Motorola cellular phones and tablets with Motorola Help Center application and their associated software", and <u>do not</u> accuse the general web content provided by RightNow, the Mobile FAQ comment functionality of which is accused of infringing when accessed via HelpCenter. (*See id.* at Exs. B & C.)

feature through any web browser or through any mechanism other than HelpCenter.[3]  (*Id.*)  Instead, in its P.R. 3-1 Disclosures, Lodsys only accused of infringement utilizing the comment feature on a portion of that web content—the product FAQs—through HelpCenter.  (*Id.*)

Prior to the court-ordered deadline for substantial completion of production, MML provided technical manuals for the various Motorola products that were identified by Lodsys, produced all non-privileged documents relating to HelpCenter that were located after a reasonable search, and made available for inspection the HelpCenter source code that reveals exactly how HelpCenter provides access to the identified RightNow web content.  MML continued to supplement its production in good faith after that deadline, including information produced in February, 2013, showing (as did Lodsys' own P.R. 3-1 Disclosures[4]) that the accused comment functionality was provided by RightNow.  Lodsys did not communicate any complaints about the volume or sufficiency of MML's production until very close to the discovery cut-off, nor did it even attempt to explore its sufficiency with a MML witness until after that extended deadline.[5]

By contrast, even though Lodsys settled litigation against RightNow and Oracle (which acquired RightNow after its litigation with Lodsys began) in December, 2012, and granted a license as part of that settlement, Lodsys unaccountably failed to produce that license to MML until late April 2013, perilously and prejudicially close to the end of fact discovery.  (KP Decl. ¶ 15.)  Soon after MML reviewed that long-withheld license, MML promptly advanced its defense of being covered by that license in written discovery and in correspondence with Lodsys' counsel, including inquiring why Lodsys was still proceeding with its case against MML based on accused

---

[3] Nor has Lodsys accused the direct-to-product shortcut feature that differentiates HelpCenter from a standard mobile web browser, such as the default Android browser.

[4] Ex. 1 at internal Ex. B pp. 26, 48.

[5] Insofar as Lodsys complains about a lack of evidence quantifying the "value" or "benefit" of HelpCenter, MML does not possess such evidence and thus could not produce it.  Indeed, it was only after Lodsys began inquiring about customized reports that MML could generate, shortly before the extended fact discovery deadline, that Lodsys raised any substantive issues with MML's production or request the preparation of reports containing specific areas of information of interest to Lodsys (which is beyond the scope of MML's obligations to produce documents).

functionality that was licensed.  (KP Decl. ¶ 16 & Ex. 3.)

Only after Lodsys realized at the eleventh hour that MML's license defense eviscerated its case did Lodsys begin to complain about discovery that MML was allegedly obliged to provide, including "MotoBlur" software that was never previously identified.  (KP Decl. ¶ 17 & Ex. 8.) Because the only technology properly accused in Lodsys' infringement contentions is already licensed, Lodsys is now attempting to manufacture illusory discovery misconduct on the part of MML.  Worse still, Lodsys seeks to achieve inferences through this motion that have already been foreclosed by Lodsys' own settlement and license with RightNow, cursory infringement investigation, deficient P.R. 3-1 Disclosures, and failure to timely prosecute its case.

The core complaint in Lodsys' Motion appears to be that certain information was produced late in discovery and/or that MML's production fails to include documents that were not located pursuant to a reasonable search, non-existent documents (which cannot be produced if they do not exist), custodial electronically-stored information ("ESI"),[6] documents that do not exist in the ordinary course of business (which MML would have to create for the purposes of this litigation, beyond the scope of its discovery obligation), and information unrelated to the accused functionality properly identified in Lodsys' P.R. 3-1 Disclosures.  Each of these complaints fails.

## III.   ARGUMENT

That this Motion was also filed at the last minute—and well after the discovery cutoff— underscores how Lodsys seeks to turn its own disengagement into a tactical advantage.  This is why "[a] motion to compel must be filed sufficiently in advance of the Court's discovery deadline to permit the Court to hear the motion, and if granted, for discovery to complete by the deadline" and why "[i]n determining whether a motion to compel has been timely filed, most courts look to the discovery deadline rather than the motion-filing deadline."  *Olivas v. U.S. Steel Corp.*, No.

---

[6] This grievance ignores Lodsys' own failure to comply with the Court's specific procedures for production of ESI and MML's repeated referral of those procedures to Lodsys' counsel, discussed in detail below.

2:11-cv-307, 2012 WL 527016 (E.D. Tex. Oct. 24, 2012) (citing cases); *see, e.g.*, *Grey v. Dallas I.S.D.*, 265 Fed. App'x 342, 348 (5th Cir. 2008) (affirming denial of a motion to compel that "was filed on the day of the discovery deadline after an extensive discovery period").

### a. MML Complied with Its Obligations to Produce Documents and Source Code and Provide Corporate Representatives for Deposition

   1. MML's Production Was Responsive to Rule 3-4(a) and Lodsys' Document Requests

Lodsys' unfounded claim that "Motorola failed to produce *any* documents in response to Lodsys' requests for production" (Mot. at 4) exemplifies its gross distortions of the record. Lodsys complains about MML's alleged failure to comply with its requests for production of documents (Mot. at 5), as if MML's timely responses and objections to these requests for production—and MML's invitations to meet and confer to narrow the numerous over-broad requests to a reasonable scope—never existed.[7] (Ex. 7.) Lodsys also ignores that MML's P.R. 3-4(a) disclosures were already responsive to many of those categories to which MML agreed to produce documents, if any exist. (KP Decl. at ¶ 18.) Moreover, Lodsys misleadingly complains of MML having produced an additional 140 responsive documents (Mot. at 4–5), before the Court-ordered deadline for substantial (i.e., not "total") completion of production of documents. (*Id.*) By February 5, 2013, MML had produced over 200 non-custodial documents, totaling nearly 6000 pages. (*Id.*)

Lodsys does not dispute these facts. (*See* Mot. at 4–5.) Moreover, Lodsys failed to raise any concern with MML's Rule 3-4(a) disclosures until its Motion, and neither replied to MML's objections to its requests for production nor took MML up on its offers to meet and confer accompanying those objections. (KP Decl. ¶ 19 & Ex. 4.) Coming after many months of total silence from Lodsys, that it only now raises this unduly-belated complaint evidences that these alleged deficiencies are a transparent attempt to manufacture a discovery dispute—one that did

---

[7] In a rare moment of candor, Lodsys even admits that it "expected that Motorola would . . . produc[e] all documents responsive to Lodsys' requests for production that Motorola had not yet produced." (Mot. at 5.) As with its 30(b)(6) notice discussed below, Lodsys' expectation that its discovery demands would be met—regardless of their relevance, scope, or breadth—and that MML's objections and responses need not be acknowledged (let alone replied to or addressed), has been a telling feature of Lodsys' conduct and tactical approach to discovery issues throughout this case.

nothing to hinder Lodsys' infringement analysis. Having <u>never</u> complained of the contents or pacing of MML's document production before the substantial completion deadline (KP Decl. ¶ 20), and having failed to specify <u>any</u> alleged deficiencies in MML's production at any point before late May 2013 (*id.*), Lodsys' conduct leads to the inescapable conclusion that Lodsys seeks to manufacture a dispute where none genuinely exists to keep MML in the case despite the MML technology it has accused being already licensed. Lodsys' complaints ring hollow and evince only its own failure to review MML's documents before the last minute or follow up on MML's discovery objections. *See Olivas*, 2012 WL 5270136 (considering "the length of time that the moving party has known about the discovery" and "any prejudice to the party from whom late discovery is sought" in assessing timeliness of a motion to compel).

        2.    MML Produced Source Code for the Instrumentalities That Lodsys Properly <u>Accused in Its P.R. 3-1 Disclosures.</u>

In another attempt to manufacture a discovery issue, Lodsys complains that MML failed to produce source code relating to a "MotoBlur launcher," which according to Lodsys, allegedly "is responsible for launching the Help Center application on its smartphones."[8] (Mot at 7.) This is a groundless complaint, first and foremost because MotoBlur is not identified anywhere in Lodsys' infringement contentions and therefore is not at issue in this case. In fact, MML produced numerous documents mentioning MotoBlur as early as May 2012 (KP Decl. ¶ 21), but Lodsys never amended its infringement contentions to include MotoBlur, nor did Lodsys ever mention MotoBlur (let alone identify it as a topic of interest) until over two weeks after the close of fact discovery on June 21, 2013. It was not until an email late on July 8, 2013, stating that Lodsys "understand[s] that Motorola has replaced the default Android launcher with its own launcher called MotoBlur," and requesting to inspect such source code, that Lodsys first identified MotoBlur

---

[8] This is not the case. When Lodsys' counsel inquired about MotoBlur at the deposition, MML's 30(b)(6) witness testified (in his individual capacity) that MotoBlur was not a "launcher," but rather was "basically a social aggregation feature where . . . you could sign into your Facebook, sign into your Twitter, and it would push all of that stuff into one stream down to your phone." (*See* Mot. Ex. E at 293:11–294:6.)

of being of interest in any way.  (KP Decl. ¶ 22 & Ex. 5).[9]

MML did not simply "refuse[] on the grounds that Lodsys supposedly waited too long to ask for the MotoBlur source code" as Lodsys misleadingly claims (Mot. at 7–8); MML also refused to provide this additional unrelated source code because it is not identified in any way in Lodsys' P.R. 3-1 Disclosures nor did Lodsys identify it in any way at any point prior to the end of the day on July 8.  (Ex. 6.)  Incredibly, Lodsys seeks to convert its utter lack of diligence in discovery and its slapdash infringement contentions into some sort of misconduct on the part of MML.  This is simply not the case, and Lodsys' laziness certainly should not be the basis for any adverse inferences against MML.  *See Olivas*, 2012 WL 5270136.

> ### 3.  MML Appropriately Produced Available Financial Information Concerning What Was Identified in Lodsys' P.R. 3-1 Disclosures.

Lodsys' complaints regarding MML's financial production are similarly flawed.  Lodsys complains that "prior to the Court ordered 'substantial completion' deadline, Motorola failed to produce any documents concerning the costs, gross margin, and profits related to the [allegedly] infringing technology"—i.e., what Lodsys has identified in its contentions as HelpCenter's providing access to the Mobile FAQ comment functionality provided by RightNow.  But such documents do not exist.  (*See, e.g.*, Mot Ex. E at 246:6–249:4).  Lodsys' P.R. 3-1 Disclosures clearly state that it is neither HelpCenter itself nor the RightNow-provided Mobile FAQ comment functionality that allegedly infringes, but only the use of HelpCenter to access that Mobile FAQ comment feature that is accused of infringing the patents-in-suit.  (*See* Ex. 1.).

Although Lodsys also complains about the revenue spreadsheet that MML produced before the substantial completion deadline (Mot. at 5 & n.1, 9–10), it was MML (and not Lodsys) who identified that the spreadsheet at issue had not been produced in sufficiently legible form.  (KP

---

[9] MML is entirely unaware of the basis for this "understanding," and Lodsys' counsel has never identified any basis for their last-minute assertion.  Even if this were true, it is irrelevant to the accused functionality in Lodsys' infringement contentions.  For example, the Motorola Accused Products also have "power" buttons, and  must be powered-on in order to function, but the on/off switch is similarly irrelevant to the accused functionality of HelpCenter.

Decl. ¶ 23).  It was MML (and not Lodsys) who took the initiative to re-produce that document as soon as MML realized that the information therein was difficult to read.  (*Id.*)  Similarly, although Lodsys complains about MML's late production of a more detailed revenue spreadsheet (Mot. at 6–7), Lodsys concedes that this document did not exist in the ordinary course of business, and had to be created especially for this litigation over the course of several hours.  (*Id.* at 5 n.1, 6.)  Once again, Lodsys omits crucial information from its motion—that Lodsys had specifically requested this document (which did not exist) during a meet-and-confer in June 2013, at which point MML undertook to gather the information for the purposes of this litigation in the interest of avoiding unnecessary motion practice and to maintain a good working relationship between the parties.  (KP Decl. ¶ 24).  Having specifically requested the creation of this document shortly before the close of fact discovery, Lodsys' attempt to use MML's good faith cooperation with this eleventh-hour request as evidence of misconduct rings utterly false.

        4.    MML Cannot Produce Documents that do Not Exist, and MML is not Required to Create Documents for the Purposes of this Litigation.

Many of Lodsys' specific complaints boil down to documents that do not exist or have not been located after a reasonable search.  While MML is obligated to produce relevant, responsive documents as they exist in the ordinary course of business, that obligation does not require MML to create from whole cloth, for the purposes of this litigation, new documents containing the information that Lodsys desires.  Lodsys' purported outrage that not very many documents exist concerning what Lodsys has accused—using the RightNow Mobile FAQ comment form via the HelpCenter app—is misplaced, particularly when Lodsys waited so long to sufficiently investigate what it has accused of infringement.

Because Lodsys accuses such a narrow and specific portion of a relatively unimportant and little-used app, it should not be surprising that there would be little (if any) documentation relating

to "the value, benefit, and reasons for developing and implementing the accused technology." (Mot. at 1, 5, 10.)  Moreover, Lodsys elicited testimony during MML's 30(b)(6) deposition (subject to MML's objections) that there are no documents regarding "analysis and use of user information obtained via" the accused technology, "comparisons/comparables to alternative methods for providing user support and obtaining the user information collected via" the accused technology or concerning "the cost savings associated with utilizing" the accused technology, as Lodsys defined the term in its P.R. 3-1 Disclosures and discovery requests (subject to MML's objections).  (*Id.*)

Lodsys' claim that "Motorola also failed to produce patent licenses relating to the accused instrumentalities" (Mot. at 5) is similarly ill-founded.  Although Lodsys concedes that MML did produce certain license agreements before the end of fact discovery (*id.* at 5 n.2), none of these licenses are related to the instrumentalities that Lodsys accused in its P.R. 3-1 Disclosures, because no such licenses exist concerning HelpCenter, let alone licenses relating to it providing access to the RightNow Mobile FAQ comment functionality.[10]  Nevertheless, out of an abundance of caution, MML exhaustively searched for and produced certain patent licenses that appeared even remotely relevant to software application functionality in Motorola handsets.

Although Lodsys claims that MML's 30(b)(6) "deposition also established that Motorola withheld relevant documents" (Mot. at 7), this assertion misconstrues MML's deposition testimony and/or reflects Lodsys' own misunderstanding of what it has properly accused of infringement in its P.R. 3-1 Disclosures.  Simply put, there are no pre-existing documents reporting "how many clicks from Help Center" nor any "cost savings documents" that address HelpCenter or its accused functionality.  (Mot. at 7 & Ex. E at, *e.g.*, 168:8–169:14, 246:6–249:4; KP Decl. ¶ 25.)  Nor are there any "San Diego Designer's documents and emails regarding adding the [allegedly] infringing

---

[10] Indeed, as will be discussed in greater detail below, MML withdrew its designation of a witness for this topic because, without any licenses relating or comparable to the functionality that Lodsys accused of infringement in its P.R. 3-1 Disclosures, no appropriate witness existed, nor could one be prepared for deposition.

feature"[11] (Mot. at 7), because, as explained above and explored at MML's 30(b)(6) deposition, the RightNow-provided Mobile FAQ comment feature that Lodsys accused in its P.R. 3-1 Disclosures had been available long before a "San Diego Designer" created HelpCenter, which simply accessed the same web content as any other browser.[12]

Lodsys' Motion implicitly concedes that certain of these categories about which it complains did not actually exist, and would have to be specifically created out of whole cloth for the purposes of this litigation, such as "reports on how many clicks from Help Center [sic.]". (Mot. at 7.) As was discussed extensively at MML's 30(b)(6) deposition, no such report exists or existed in the ordinary course of business, and accordingly, would have to be generated specifically for the purposes of this litigation. (KP Decl. ¶ 25). MML's obligations to respond to document requests and under P.R. 3-4(a) and do not require the creation of such new reports for Lodsys.

Other categories of documents that were allegedly withheld were improper to request in the first place because they neither specifically address nor are limited to the functionality that Lodsys accuses in its P.R. 3-1 Disclosures, instead fishing for much broader topics such as all online feedback from all sources. As was explored extensively at MML's 30(b)(6) deposition, the "Channel 'power points'," "feedback reports," and "CSAT and DSAT reports" (Mot. at 7) that were discussed relate to Motorola's overall support web content (which Lodsys did not accuse of infringement) and do not break out any feedback provided through the HelpCenter App. (Mot. Ex. E at 155:2–161:2, 192:22–201:7.) Even more over-broad and less relevant are "reports on customer support" and "cost savings documents" (Mot. at 7), which, although may generally address customer support and/or Motorola's overall web content, similarly do not address or break out the RightNow Mobile FAQ comment functionality. ((Mot. Ex. E at, *e.g.*, 246:6–249:4.)

---

[11] As discussed in greater detail below, such documents and email are also custodial ESI, and rather than complying with the procedure set forth by the Court to obtain such custodial ESI, Lodsys has instead has simply demanded, at the last minute and in contravention of the Court's Discovery Order, that these broad categories be produced.

[12] *See* Mot. Ex. E at, *e.g.,* 67:18–82:4, 133:10–137:24, 153:24–154:14, 168:8–21.

In sum, MML cannot produce what does not exist, MML is not required to create new documents for the purposes of this litigation to respond to Lodsys' document requests, and MML's P.R. 3-4(a) and discovery obligations do not require MML to produce documents that do not address or are unrelated to what Lodsys has accused of infringement.

### 5. MML was not Required to Produce Custodial ESI Because Lodsys Failed to Comply with the Court's Procedures for Discovery of Such Information.

Lodsys' assertion that that the 30(b)(6) deposition establishes that MML has withheld documents is further incorrect to the extent that it includes custodial ESI.[13] Lodsys ignores that it has never complied with the specific procedures in the Court's Discovery Order [Dkt. 378 & Ex. A] necessary to obtain custodial ESI, and improperly seeks to shift the burden to formulate proper ESI searches to MML alone. The Discovery Order specifically requires identification of "appropriate custodians, search terms, and timeframe" such that overproduction is minimized, before ESI must be produced. (*Id.* at Ex. A ¶¶ 9–10.) "Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business," (*id.* ¶ 7) and "[i]ndiscriminate terms, such as the producing company's name *or its product name*, *are inappropriate* unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction." (*Id.* ¶ 9 (emphasis added).) Instead, well after the close of fact discovery, Lodsys now attempts to engage in precisely the type of burdensome fishing expedition that the Discovery Order's ESI provisions are properly intended to prevent.

The first (and only) time before the close of fact discovery that Lodsys even came close to meeting its requirements to cooperate with MML to identify custodians, search terms, or timeframe was in June 2013, shortly before the close of fact discovery, when Lodsys' counsel stated over the

---

[13] This includes "development documents from a China group and a San Diego Developer" and the overlapping "San Diego Designer's documents and emails regarding adding the [allegedly] infringing feature," as well as "the witnesses' [sic.] own documents and emails regarding adding the [allegedly] infringing technology." (Mot. at 7.) Such broad categories are inappropriate ESI requests under the Discovery Order. ([Dkt. 378] at Ex. A ¶¶ 7, 9–10.)

phone, in the context of various broad categories of documents that Lodsys was seeking, that he was generally interested in Glenn Dubois' emails "related to HelpCenter and RightNow." (KP Decl. ¶ 26.) MML's counsel informed Lodsys' counsel that this broad request did not comply with the Discovery Order. (*Id.*) Lodsys' counsel did not meaningfully respond, and failed to suggest or inquire about appropriate search terms or timeframe (or request MML's assistance in doing so) to get the documents that Lodsys identified at the eleventh hour. (*Id.*) Moreover, such broad company and product names are clearly inappropriate under the Discovery Order.

Even now, in its Motion, Lodsys still maintains its alleged entitlement to production of inappropriately broad categories of emails, without any reference to search terms, custodians, or timeframe or to having properly requested them before the close of fact discovery. (Mot. at 1–2.) Moreover, even these and other[14] impermissibly broad requests were not raised before July 9, 2013, well after the close of fact discovery. (KP Decl. ¶ 27.) Even at that late date, and as maintained in its motion, Lodsys improperly seeks to abstain from the procedures required by the Discovery Order and to place the entire burden of formulating a sufficiently narrow ESI search on MML alone. The Discovery Order does not require MML to guess the proper search parameters.

6. **MML Properly Designated and Provided 30(b)(6) Witnesses for Appropriate Topics about which Testimony Could be Provided.**

MML served timely objections to Lodsys' vague, ambiguous, and grossly overbroad 30(b)(6) deposition notice, which also indicated MML's willingness to meet-and-confer regarding the propriety and scope of Lodsys' 30(b)(6) topics. (Ex. 7.) Lodsys never did so. (KP Decl. ¶ 28.) Despite the numerous meet-and-confers and other communications leading up to MML's 30(b)(6) depositions over more than eight weeks, Lodsys' counsel never raised any issues with MML's Responses and Objections ("R&Os"), but instead focused solely on the timing and

---

[14] Lodsys' Motion also identifies, for the first time, other broad categories of emails and other custodial ESI that it seeks, alleging that MML failed to produce them. (Mot. at 7.) These include "development documents from a China Group and a San Diego Developer," "the witnesses' [sic.] own documents and emails regarding adding the infringing technology," and "a San Diego Designer's documents and emails regarding adding the infringing feature." (*Id.*)

locations of the depositions.  (*Id.*)  Yet again, Lodsys now attempts to shift its discovery obligations onto MML through its own inactivity.  Lodsys claims that MML had an obligation to produce a witness for every single topic that Lodsys noticed, and that if MML were not going to do so, MML was required to move for a protective order[15] despite MML's timely-served R&Os and willingness to meet and confer.  (*See* Mot. at 6.)  Lodsys' position requires that MML should have inferred disagreement, rather than acquiescence, from Lodsys' failure to acknowledge or address the R&Os.

Rather, MML was clear and its consistent about its position during discussions leading up to its 30(b)(6) depositions that MML would make a technical witness available to testify about HelpCenter on July 2, and a financial witness available to testify about the accused Motorola devices on July 9.[16]  (*Id.* ¶ 29.)  MML followed through and provided those witnesses on those dates.  Lodsys' counsel never inquired about witnesses for additional areas or topics until after the conclusion of the second deposition on July 9.  (*Id.*)  This was raised far too late, mere hours before the twice-extended close of fact discovery; in fact, the Court had agreed to extend fact discovery for the limited purpose of completing these two depositions by July 9.  (*See* [Dkt. 709, 725].)  Any subsequent 30(b)(6) depositions of MML witnesses would have been untimely.

Lodsys' claim that Motorola "unilaterally decided not to appear for its deposition" and "failed to designate any witnesses" for the thirty-two topics it complains of is a complete distortion of the factual record and ignores the Federal Rules.  (Mot. at 6, n.3.)  Lodsys had been aware no

---

[15] Given Lodsys' utter non-responsiveness to MML's R&Os, MML could not have so moved in compliance with Local Rule CV-7(h) (which would have been opposed) without meeting and conferring on these issues.  But based on Lodsys' silence, MML could neither assume nor infer that there were any issues in dispute or that any meet-and-confer on the scope of the depositions would be necessary.

[16] Although Lodsys now complains about the division of topics, Lodsys' counsel had long been aware of this split of topical areas, which in view of the R&Os, made reasonably clear the topics for which MML would be providing each witness.  Lodsys' counsel did not follow up and inquire about the specific topics for which the respective witnesses would be designated or raise any concerns beforehand about insufficient specificity concerning the topics about which each MML witness would testify.  (KP Decl. ¶¶ 28–29)  Had Lodsys desired more specificity than that provided by "HelpCenter technical witness" and "Motorola financials witness" in view of the R&Os, Lodsys could have asked at any point during the eight-week period before the depositions began, during which numerous other emails and phone calls were exchanged between counsel.  (*Id.*)

later than May 13, when MML timely served its R&Os, that MML would not produce a witness to each and every single one of the topics about which Lodsys now complains. (KP Decl. ¶ 28.) But Lodsys never indicated at any point before July 9, 2013 that there were any "differing views" regarding the topics on which MML would and would not designate a 30(b)(6) representative, nor did Lodsys take MML up on its invitation to meet and confer on thereon. (*Id.*) Had Lodsys wanted MML to designate a witness (rather than manufacture an issue after the fact), it could have and should have met and conferred with MML and then moved to compel a 30(b)(6) designation for any unresolved topics.[17] (*See* Fed. R. Civ. P. 37(a)(3)(B)(ii).) The Federal Rules notably impose this burden on the party *seeking* discovery, not the party designating a witness. (*See id.*).

As for Topic 27, MML agreed to provide "a witness to testify about relevant patent licenses or license negotiations that relate to HelpCenter, to the extent that any such licenses or negotiations exist." (Ex. 7.) As Lodsys recognizes, MML's duty extends only to preparing a designee "to the extent matters are reasonably available." (Mot. at 11.) Although MML had initially designated Benjamin Sherwin for this topic, it later became apparent during preparation that no such licenses or negotiations existed; MML, therefore, appropriately de-designated Mr. Sherwin for Topic 27, because he could not be prepared for matters that did not exist. (KP Decl. ¶ 30.) Rather than comprising a failure to appear, as Lodsys suggests,[18] this instead ***prevented*** an improper failure to appear on a designated topic. (*See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) ("If that [designated] agent is not knowledgeable about relevant facts . . . then the appearance is, for all practical purposes, no appearance at all.")

### b. Lodsys' Motion Does Not Comply With Federal Rule 37 and Local Rule 7

---

[17] But before filing such a motion, Lodsys would have had to meet-and-confer with MML regarding its R&Os.

[18] Rule 37(d) only applies only applies when a party or Rule 30(b)(6) designee "fails, after being served with proper notice, to appear for that person's deposition." (Fed. R. Civ. P. 37(d)(1)(A).) By its own wording, Rule 37(d)(1)(a) only applies to a failure of "that person" to appear for a deposition, and does not concern the scope of testimony, ability to answer posed questions, or designation of noticed topics. Rather, it is Rules 37(a)(3)(B)(i) and (ii) that address failures to answer posed questions and designate witnesses for noticed 30(b)(6) topics.

Having failed to raise any purported deficiencies in MML's production on a timely basis, Lodsys then attempted to shift the burden of its delay to MML. Although fact discovery had ended more than two weeks earlier, Lodsys' counsel, approached MML's counsel on the afternoon of July 9th in Illinois, at the conclusion of the 30(b)(6) deposition of Benjamin Sherwin, to identify a list of purported deficiencies in MML's document production and 30(b)(6) designations. (KP Decl. ¶ 31.) This was the first time that Lodsys approached MML with any such list. (*Id.*) The purported deficiencies were wide ranging, from "general production deficiencies" to custodial documents and HelpCenter reports that Lodsys claimed MML withheld, which are included in Lodsys' Motion. (*Id.*) MML's counsel noted Lodsys counsel's comments and informed Lodsys that it would check with MML and respond in a timely manner to these broad requests. (*Id.*)

Nevertheless, Lodsys demanded that MML's lead and local counsel come to a meet-and-confer in Dallas, Texas less than 44 hours later, on the morning of July 11. (*Id.* ¶ 32.) MML's counsel responded that a meet and confer at that time was unworkable, not only because MML would need to research the exhaustive list of issues that had just been presented, but also because MML's lead counsel had prior commitments in California on July 11 that could not be rescheduled on such short notice. (*Id.*) Lodsys' counsel did not propose an alternative time or indicate that any other time would be acceptable, nor did it approach MML about seeking an extension. (*Id.*)

Later, on Friday, July 12, Lodsys finally inquired about a joint motion to extend the deadline that day to file such motions in the hope that Lodsys and MML could address such issues in the interim. (*Id.* ¶ 33 & Ex. 9.) MML's counsel responded that pending the expected client approval, MML could agree to a bilateral extension to file such motions, and requested a response indicating whether this would be acceptable. (*Id.*) Lodsys' counsel did not respond to this communication, (*id.* at ¶) but instead of filing the agreed-to motion to extend the deadline, nearly

seven hours later and just two hours before the deadline, filed its Motion. ([Dkt. 745].)  Even after

Lodsys filed the Motion, MML's counsel nevertheless agreed, as a show of good faith, to meet and

confer the following week in Tyler, Texas, which MML did.  (*Id.*)

Lodsys, however, twists the facts of this interaction with MML to give the false impression

that MML "did not attend" a scheduled meet and confer and thus acted in bad faith (Mot. at 17) in

order to provide a basis for Lodsys to move for sanctions and to compel without the meet-and-

confer required under the Local Rules.  (*See* CV-7(h).)  MML's properly-noticed inability to travel

to a meet-and-confer on such short notice obviously cannot rise to the "bad faith" required to file

an opposed motion without a meet-and-confer, nor can Lodsys' unilateral demand and refusal to

even propose alternative times constitute a "good faith" effort to meet and confer, which the

Federal and Local Rules both require before filing motions to compel, for sanctions, and/or

opposed discovery motions.  (*See* Fed. R. Civ. P. 37(a)(1) and (d)(1)(B); CV-7(h).)

### c.  Sanctions are Unwarranted and Inappropriate

As discussed above, MML's inability to comply with Lodsys' inappropriate last-minute

demand for an in-person meet-and-confer in Dallas, TX, does not indicate bad faith and is not

sufficient basis for Lodsys to file such a motion without a meet-and-confer.  As has proven typical

throughout this litigation, Lodsys' counsel proceeds on the unwarranted assumptions that they can

wait until (or even after) the last minute to raise issues, and that their demands must be met, no

matter how large the burden or how little notice is provided.

Here, the record does not reflect any bad faith or willful abuse on MML's part. To the

contrary, MML has attempted at every turn to meet its own obligations, to communicate its

positions, and to reasonably attempt to understand and accommodate Lodsys' proper discovery

demands.  Lodsys failed to take any actions for months in response to MML's timely and proper

objections, and such failure to respond to reasonable objections and notifications of its own

deficiencies has been a hallmark of Lodsys' course of conduct throughout this case. Only now, after fact discovery has closed, does Lodsys identify a barrage of complaints concerning issues that it had long ignored. Lodsys should not be rewarded for its lack of diligence or its ambush tactics.

As any litigant reasonably would, MML relied on Lodsys' silence in response to MML's R&Os as acquiescence. (KP Decl. ¶ 28.) Having failed to raise such complaints when they could properly be addressed in a timely fashion, and faced with the prospect of its case against MML evaporating thanks to the license that it granted to RightNow and Oracle, Lodsys now improperly blames MML for Lodsys' own silence, dilatory conduct, and lack of diligence in prosecuting its case. Lodsys should not be allowed to profit from its sloth, least of all through this unwarranted and untimely Motion. *See Olivas*, 2012 WL 5270136; *Grey*, 265 Fed. App'x at 348.

### d. Lodsys' Motion is Procedurally Deficient Under the Federal and Local Rules

In addition, Lodsys' Motion is procedurally deficient in failing to meet the requirements of Rules 37(a)(1) and 37(d)(1)(B) of the Federal Rules of Civil Procedure and Local Rule CV-7(i). These procedural deficiencies also require denial of Lodsys' Motion in its entirety:

- Local Rule CV-7(i) requires that "In discovery-related motions, the certificate of conference shall be signed by the lead attorney *and any local counsel*." (Local Rule CV-7(i) (emphasis added).) This Motion, seeking to compel production and sanctions for alleged discovery misconduct is indisputably "discovery-related." Although William E. "Bo" Davis, III is local counsel for Lodsys, and his signature is accordingly required on the certificate of conference, no such signature has been provided. (Mot. at 17).

- Federal Rule 37(a)(1) requires that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain without court action." Similarly, Rule 37(d)(1)(B) requires that [a] motion for sanctions for failing to answer or respond *must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action*," (emphasis added). These procedural certifications and substantive meet-and-confer requirements are distinct from those imposed by the Local Rules (which do not modify Rule 37) and the Discovery Order. Although Lodsys' Certificate of Conference mentions compliance "with both the meet and confer requirement in Local Rule CV-7(h) and the Court's Discovery Order" (Mot at 17), it does not certify compliance with either of these Rule 37 meet-and-confer requirements, nor does it elsewhere provide these required certifications. Local Rule CV-7 makes clear that such obligations impose not only a substantive requirement to meet-and-confer and but also include a separate procedural requirement to certify compliance with the obligation, both of which must be satisfied to meet the meet-and-confer certification requirement. (*See* Local Rule CV-7.)

Respectfully submitted, this 1st day of August, 2013.

    */s/ Scott T. Weingaertner, with permission by*
*Michael E. Jones*
Scott T. Weingaertner
Robert F. Perry
Christopher C. Carnaval
Lowell D. Jacobson
Ketan Pastakia
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
Tel.: (212) 556-2100
Fax: (212) 556-2222

Brian C. Banner
KING & SPALDING LLP
401 Congress Avenue
Austin, TX 78701
Telephone: (512) 457-2029
Facsimile: (512) 457-2100
bbanner@kslaw.com

Michael E. Jones
Allen F. Gardner
Patrick C. Clutter, IV
POTTER MINTON
110 N. College Ave., Suite 500
Tyler, TX  75702
Tel.: (903) 597-8311
Fax: (903) 593-0846

Attorneys for Defendant MOTOROLA
MOBILITY, LLC

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 1, 2013.

/s/ Michael E. Jones
Michael E. Jones